HEWLETT–PACKARD COMPANY,
Plaintiff–Cross Appellant,

v.

MUSTEK SYSTEMS, INC. and Mustek, Inc., Defendants–Appellants.

Nos. 02–1372, 02–1395, 02–1465.

United States Court of Appeals,
Federal Circuit.

Aug. 7, 2003.

Rehearing and Rehearing En Banc
Denied Sept. 12, 2003.

John Allcock, Gray Cary Ware & Freidenrich LLP, of San Diego, CA, argued for plaintiff-cross appellant. With him on the brief were James T. Hannink and Joseph P. Reid. Of counsel were Licia E. Vaughn, Mary A. Lehman, and John E. Giust.

Joseph R. Re, Knobbe, Martens, Olson & Bear, LLP of Newport Beach, CA, argued for defendants-appellants. With him on the brief were James F. Lesniak, Paul N. Conover, and Joseph S. Cianfrani.

Before MAYER Chief Judge, SCHALL and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge DYK. Dissenting opinion filed by Circuit Judge MAYER.

DYK, Circuit Judge.

Mustek Systems, Inc. and Mustek, Inc. (collectively "Mustek" or "appellants") ap-

peal the judgment of literal infringement of claims 1, 4, and 7–9 of United States Patent No. 5,336,878 ("the '878 patent"). *Hewlett–Packard Co. v. Mustek Sys., Inc.,* No. 99–CV–0351, slip op. at 13–18 (S.D.Cal. Apr. 26, 2002) (*"Order Re: Post–Trial Motions"*). Hewlett–Packard Co. ("Hewlett" or "appellee") cross-appeals the judgment of invalidity under 35 U.S.C. § 102 of claim 1 and under 35 U.S.C. § 103 of claims 1–8 of United States Patent No. 4,837,635 ("the '635 patent"). *Id.* at 5–10. On the main appeal, we vacate the judgment of infringement of the asserted claims of the '878 patent. On the cross appeal, we affirm the judgment of invalidity of the asserted claims of the '635 patent.

## BACKGROUND

Hewlett is the assignee of the '878 and '635 patents, respectively titled "Variable Speed Single Pass Color Optical Scanner" and "A Scanning System in which a Portion of a Preview Scan Image of a Picture Displaced on a Screen is Selected and a Corresponding Portion of the Picture is Scanned in a Final Scan." Both patents are generally directed to optical scanner technology, in which images and text from a document are converted into electronic data.

The '878 patent addresses the problem of correlating data received by three linear sensors 24, 26, and 28 (as shown in figure 4 reproduced below). The three linear sensors of the prior art and disclosed devices, which are positioned in fixed parallel relationship, each captures an optical spectral component corresponding respectively to the colors red, green, and blue (RGB). The document being scanned and the sensors move relative to each other so that the sensors scan across the image. The data collected at one sensor at a given time, however, will not correspond to the same portion of the image collected by another sensor at that same time. In order to correctly reproduce an electronic version of the scanned image, the data captured by the three sensors during the image scan must be properly correlated.

For scanners that operate solely at a single scan speed, the correlation of the color component data can be simply performed. A problem arises, however, in scanners that possess multiple selectable scanning speeds because the correlation step must account for the scan speed. The '878 patent discloses and claims systems and methods for performing this speed sensitive color component correlation by accounting for the speed selected by the operator of the scanner.

The '635 patent discloses and claims performing scanning operations in two steps, a low resolution scan (preview scan) followed by a high resolution scan (final scan).

Hewlett filed suit on February 26, 1999, alleging infringement by Mustek of five

patents assigned to Hewlett. Of those five patents only the '878 and '635 remain on appeal, the claims and counterclaims associated with the other patents having been dismissed before trial. The issues of infringement and validity were tried to the jury. As to infringement, the jury found that Mustek literally infringed claims 1–8 of the '635 patent and claims 1, 4, 7–10, and 13 of the '878 patent. The jury did not address infringement under the doctrine of equivalents. Having found literal infringement, the jury did not mark either "yes" or "no" on the special verdict form as to that theory of infringement.

As to validity, the jury found that Mustek proved by clear and convincing evidence that claim 1 of the '635 patent was invalid based on U.S. Patent No. 4,631,599 to Cawkell ("Cawkell") and that claims 1–8 of the '635 patent were "obvious in view of the prior art." The jury rejected the remainder of Mustek's invalidity arguments, finding the asserted claims of the '878 patent not invalid. The jury found that Mustek's infringement of the '878 patent was not willful and granted $2,330,606 in lost profits damages and $638,500 in reasonable royalty damages.

On April 29, 2002, the district court declined to set aside the jury verdicts of infringement and invalidity. Although the jury had not addressed the issue of infringement under the doctrine of equivalents with respect to the claims of the '878 patent, and Hewlett's motion had not requested judgment as a matter of law (JMOL) on this issue, the court granted JMOL of infringement under the doctrine of equivalents as to claims 1, 4, 7, 8–10,

and 13 of the '878 patent. *Order Re: Post–Trial Motions* at 13–18. Finally, the court granted JMOL in favor of Mustek on the issue of damages, finding that the amount awarded by the jury was not supported by substantial evidence and that there was no basis for a new trial on damages. *Id.* at 18–24. Also on April 29, 2002, the district court issued a permanent injunction against Mustek. *Hewlett–Packard Co. v. Mustek Sys., Inc.,* No. 99–CV–0351 (S.D.Cal. Apr. 26, 2002) (*"Permanent Injunction"*). On May 22, 2002, the district court issued an order correcting the permanent injunction and JMOL order, holding claims 10 and 13 of the '878 patent invalid. *Hewlett–Packard Co. v. Mustek Sys., Inc.,* No. 99–CV–0351 (S.D.Cal. May 22, 2002) (*"Order Granting Defendants' Application to Correct Injunction and JMOL Order"*). Mustek filed a timely appeal of the final judgment. Hewlett filed a timely cross-appeal. We have jurisdiction over the appeal and the cross-appeal under 28 U.S.C. § 1295(a)(1).[1]

## DISCUSSION

 We review the grant or denial of JMOL without deference by reapplying the JMOL standard of the district court. *Rambus Inc. v. Infineon Techs. Ag,* 318 F.3d 1081, 1086 (Fed.Cir.2003). We review the denial of a motion for a new trial for an abuse of discretion. *Electro Sci. Indus. v. Gen. Scanning, Inc.,* 247 F.3d 1341, 1349 (Fed.Cir.2001). We review the jury's factual determinations for substantial evidence. *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.,* 308 F.3d 1167, 1177 (Fed.Cir.2002). We re-

---

1. Hewlett has not appealed the district court's grant of JMOL of invalidity of claims 10 and 13 of the '878 patent, and Mustek has not appealed the determination that the remain-

der of the claims of the '878 patent were not invalid. Mustek has not appealed the jury verdict of literal infringement of claims 1–8 of the '635 patent.

view issues of claim construction without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc). We review "[the] jury's conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1353 (Fed.Cir.2001).

I

On the main appeal the issue is whether the jury verdict of literal infringement of claims 1, 4, and 7–9 of the '878 patent is supported by substantial evidence. We hold that it was not, and that JMOL should have been granted in favor of Mustek.

2. Claim 1 of the '878 patent provides in its entirety:

An optical scanner device for producing machine-readable data representative of a color image of a scanned object comprising:

a) light source means for illuminating said object;

b) imaging means for focusing imaging light from an aligned portion of said object onto an image region for providing an image of said aligned portion of said object at said image region;

c) a photosensor assembly operable in successive sampling intervals for generating image data representative of a color image of said object comprising:

i) a first linear photosensor means located in said image region and having a predetermined photosensor line width for generating a first data signal representative of the intensity of imaging light impinged thereon; and

ii) a second linear photosensor means located in said image region and having said predetermined photosensor line width for generating a second data signal representative of the intensity of imaging light impinged thereon, said second linear photosensor means being positioned parallel to

Claim 1 is the sole independent claim of the '878 patent at issue and provides in pertinent part "scan speed indicating means for generating a scan speed signal indicating a selected one of different scan speeds of said displacement means."[2] The district court interpreted this recitation as a means-plus-function recitation as provided under 35 U.S.C. § 112, ¶ 6. Based on this interpretation, the court instructed the jury as follows:

In claim 1, element f, beginning at column 14, line 54, the phrase, quote, "scan speed indicating means for generating a scan speed signal," close quote, means either, "A," a scan speed selector which, *based on the user's selection,* generates a scan speed signal that indicates a selected one of different scan speeds; or, "B," its equivalent.

said first linear photosensor means and spaced therefrom by a first photosensor gap distance;

d) first and second color filter means operatively associated with said first and second linear photosensor means respectively for filtering imaging light focused on said linear photosensor means whereby said first photosensor means receives only light of a first preselected color and said second photosensor means receives only light of a second preselected color;

e) displacement means for producing relative displacement between said object and said imaging means for producing a sweeping scan image of said object in said image region;

f) scan speed indicating means for generating a scan speed signal indicating a selected one of different scan speeds of said displacement means;

g) data processing means responsive to said scan speed signal for correlating data from said first data signal with data from said second data signal such that the correlated data are representative of the intensity of light from the same general location on said object regardless of the selected scan speed.

The scan speed selector may be comprised of a pushbutton selector and a conventional L.C.D. display or the equivalent of such pushbutton selector and display.

A, quote, "scan speed signal," close quote, is an electrical signal indicative of the user's selected scan speed.

(Tr. at 2296) (emphasis added). Neither party objected to this instruction. But in connection with a post-trial motion for JMOL of non-infringement, Mustek urged that the district court should construe this limitation for JMOL purposes as requiring that "the user select a specific scanning speed (e.g., by pressing a button) and that the user know what that selected speed is (e.g., by looking at the scan speed selection display)." Defendants' Memorandum of Points and Authorities in Support of Renewed Motion for Judgment as a Matter of Law of Non–Infringement of U.S. Patent No. 5,336,878, at 9 (*"Defendants' JMOL Motion"*). In the post-trial order the district court described the requirement of the claim limitation as follows:

> Here, the function of element (f) is two-fold: (1) to allow a user to select different scan speeds for the displacement assembly; and (2) to generate a scan speed signal that is indicative of the selected scan speed. (*See* Ct. Rec. 232.) To support a finding of literal infringement, these two functions must be identical in the accused devices.

Mustek's accused scanners can operate at two, three, or four different speeds (depending on the model). There is no button on the products that is labeled "push here to select speed." *However, the accused scanners do contain structures that allow a user to select resolution. Although there is no one-to-one correspondence between reso-lution and speed, there is some relationship between the two. ... When changing the resolution, the user may not know that he/she is changing the scan speed (in fact, the user may not know that scan speed is changing at all).* Moreover, not all changes in resolution will result in a change of the scan speed.

For this JMOL motion, the question, in simplest form, is: was sufficient evidence presented for the jury to find that selecting resolution is "identical" to selecting scan speed?

*Order Re: Post–Trial Motions* at 14–15 (emphasis added). The court then analyzed Mustek's infringement defenses, holding that 1) "there is no knowledge requirement" on the part of the scanner user; 2) "there is no one-to-one correspondence requirement" between the variable adjusted by the scanner user and the scan speed; and 3) "there is no requirement that speed be measured or indicated in any particular units." *Id.* at 15–16. The claims so construed, the district court found that substantial evidence supported the jury's verdict of literal infringement.

■ At the outset, we note that the parties cannot reserve issues of claim construction for the stage of post-trial motions. *See Interactive Gift Express, Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1345–46 (Fed.Cir.2001). When issues of claim construction have not been properly raised in connection with the jury instructions, it is improper for the district court to adopt a new or more detailed claim construction in connection with the JMOL motion. On JMOL, the issue here should have been limited to the question of whether substantial evidence supported the verdict under the agreed instruction. *See Moba, B.V. v. Diamond Automation, Inc.,* 325 F.3d 1306, 1313–14 (Fed.Cir.2003). In other words,

where the parties and the district court elect to provide the jury only with the claim language itself, and do not provide an interpretation of the language in the light of the specification and the prosecution history, it is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation of the claim language and test the jury verdict by that new and more detailed interpretation. The verdict must be tested by the charge actually given and by giving the ordinary meaning of the language of the jury instruction. We hold that the verdict here was contrary to the undisputed facts and unsupported by substantial evidence because the accused devices do not, as required by the instruction, include "a scan speed selector which, based on the user's selection, generates a scan speed signal that indicates a selected one of different scan speeds" wherein the scan speed signal is "an electrical signal indicative of the user's selected scan speed."

Under the jury instruction, the user must select the scan speed.[3] This requires "choice" of a scan speed by the user. The undisputed evidence is that the user does not select scan speed in the accused devices, but rather a resolution. *Order Re: Post–Trial Motions* at 14–15. The selection of a resolution in the accused devices does not share a one-to-one correspondence with a resulting scan speed, but instead many different resolutions share identical scan speeds. Hewlett's argument is that the selection of a resolution "necessarily" is a selection of scan speed. (Appellee's Br. at 4.) But it is not sufficient

that another action by the user (resolution selection) results in a scan speed. By conceding that it is resolution and not scan speed that is selected by the user, Hewlett concedes that the accused devices do not perform the required function as defined in the instruction and thus that the accused devices do not literally infringe the asserted claims. *See Lockheed Martin Corp. v. Space Sys./Loral, Inc.,* 324 F.3d 1308, 1320 (Fed.Cir.2003) ("Literal infringement of a § 112 ¶ 6 claim requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification."). Thus, the jury verdict of literal infringement must be set aside.

## II

Mustek also challenges the district court's award of JMOL on the issue of infringement under the doctrine of equivalents. "An accused structure that does not literally infringe a means-plus-function claim may nevertheless infringe under the doctrine of equivalents." *Id.* (providing that, whereas the equivalents analysis under 35 U.S.C. § 112, ¶ 6 requires identity of function, the doctrine of equivalents extends to insubstantially different functions). We hold that the district court erred in awarding JMOL on this issue.

Having found literal infringement, the jury did not reach the question of infringement under the doctrine of equivalents. *Order Re: Post–Trial Motions* at 13 (not-

---

3. In interpreting jury instructions we use general purpose dictionaries, which provide relevant definitions of "select" as "to choose from a number or group usu. by fitness, excellence, or other distinguishing feature ... to choose something from a number or group." *Web-* *sters Third New International Dictionary* 2058 (1968); *see also Random House Webster's Unabridged Dictionary* 1734 (2d ed.1998) ("select ... to choose in preference to another or others; pick out ... to make a choice; pick.").

ing that the jury was instructed to "mark only one box for each claim"). However, in response to post-trial motions for JMOL, the district court granted JMOL of infringement under the doctrine of equivalents. The court stated:

> [T]he court finds that even if the evidence did not support literal infringement, JMOL of infringement under the doctrine of equivalents is appropriate. Specifically, the Court finds that the function of selecting "resolution" on the accused products is equivalent to the function of selecting "scan speed" referred to in the patent. Therefore, even if the jury verdict of literal infringement cannot be supported by the evidence, the Court grants HP's Motion for JMOL of Infringement.

*Id.* at 17. This was improper, since no timely motion for JMOL of infringement under the doctrine of equivalents had been made. *See Johnson v. N.Y., New Haven & Hartford R.R. Co.*, 344 U.S. 48, 50, 73 S.Ct. 125, 97 L.Ed. 77 (1952). In *Johnson*, the respondent submitted a motion to the district court to set aside the jury verdict. However, the appellate court entered judgment notwithstanding the verdict based on that motion. *Id.* The Supreme Court reversed, holding that "[r]espondent's motion should be treated as nothing but what it actually was, one to set aside the verdict—not one to enter judgment notwithstanding the verdict." *Id.* at 51, 73 S.Ct. 125. So too here, it was improper for the district court to expand Hewletts opposition to Musteks motion for JMOL of non-infringement to grant JMOL of infringement under the doctrine of equivalents in favor of Hewlett.[4]

A new trial is also not appropriate because Hewlett did not make a sufficient record with respect to the equivalents claim. Hewlett argues that:

> Dr. Stevenson confirmed his findings [of literal infringement] four different ways—external operation and observation, internal oscilloscope testing, review of the Mustek documents and depositions, and reverse engineering of Mustek's source code.... *After explaining this evidence, Dr. Stevenson expanded his conclusions on literal infringement to include that Mustek's scanners performed the same functions the same ways to achieve the same results.* (A4247.) If Mustek's accused scanners do not literally infringe, they certainly infringe under the doctrine of equivalents.

(Appellee's Br. at 15–16) (emphasis added). The only evidence to which Hewlett points to on the issue of equivalents was provided, in its entirety, by the following testimony of Dr. Stevenson:

Q. So, as to each claim element that you have analyzed with respect to all the Mustek devices, do they perform the same function as the claim element?

A. Yes.

Q. And do they do it to achieve the same result?

A. Yes.

Q. And do they do it in the same way?

A. Yes.

(Tr. at 462.) This testimony falls far short of the long-standing evidentiary requirements for proof of infringement under the

---

4. *But cf. Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 n. 6 (Fed.Cir.1996) (stating that "an oral, pre-verdict motion requesting a directed verdict on the issue of noninfringement was sufficient to support a post-verdict motion concerning the doctrine of equivalents").

doctrine of equivalents. *See Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed.Cir.1996). Hewlett was required to provide evidence "on a limitation-by-limitation basis." *Id.* (citing *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 935 (Fed.Cir. 1987) (en banc), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988)). That evidence must have included "particularized testimony and linking argument." *Id.* (quoting *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422 (Fed.Cir. 1989)). The testimony cited by Hewlett does not even address the issue of equivalence of function. In short, Hewlett failed to introduce evidence to support a verdict in its favor under the doctrine of equivalents.

■■■■■ On motions for a new trial we apply the law of the regional circuit, which "appears to be common to all circuits." *Vulcan Eng'g Co. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1379 (Fed.Cir.2002) (citing *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1188 (Fed.Cir.1996)). Failure to present evidence at trial is not a grounds for a new trial. *Id.* at 1380 ("A party must present its evidence at the trial, absent some extraordinary development or unwarranted surprise, by a party or the court, whereby justice requires redoing the trial."). Instead, where, as here, "the evidence presented in the first trial would not suffice, as a matter of law, to support a jury verdict under the properly formulated [instruction], judgment could properly be entered ... at once, without a new trial." *Exxon Chem. Patents v. Lubrizol Corp.*, 64 F.3d 1553, 1558 (Fed.Cir. 1995) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 513–514, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988)), *vacated-in-part on other grounds by* 137 F.3d 1475 (Fed.Cir.1998). A new trial on the issue of

infringement under the doctrine of equivalents as to the '878 patent, therefore, is unwarranted.

## III

We turn then to the cross-appeal, which concerns the jury verdicts of anticipation and obviousness with respect to the claims of the '635 patent.

### A. Anticipation of Claim 1.

■■■ The jury found claim 1 of the '635 patent to have been anticipated by Cawkell. We agree with the district court that substantial evidence supports the jury verdict. Claim 1 provides:

> In a computing system, a method for scanning a picture using a scanner and for presenting to a user a final scan image of the picture on a screen, the method comprising:
>
> (a) performing a preview scan of the picture to produce a preview scan image of the picture;
>
> (b) displaying the preview scan image of the picture on the screen;
>
> (c) selecting portion of the preview scan image for final scan;
>
> (d) performing a final scan of a portion of the picture which corresponds to the portion of the preview scan image to produce a final scan image; and
>
> (e) displaying on the screen the final scan image produced by the final scan.

The only dispute as to anticipation of claim 1 is whether steps (d) and (e) were disclosed in Cawkell.

The district court instructed the jury as to claim 1 that "all terms in claim 1 should be given their ordinary meaning." (Tr. at

2287.) Hewlett objected to this instruction, requesting the following instruction instead:

> A "final scan of a portion of the picture which corresponds to the portion of the preview scan image" is a scan of a selected portion of the picture, performed after the display of the preview scan image and after the selection of a portion by the user, that corresponds to the selected portion of the preview scan image. The portion of the picture scanned during the final scan "corresponds" to the selected portion of the preview scan image if the final scan image shows the selected portion of the preview scan image, even if the available options and settings of the scanner are changed after the preview scan but before the final scan.

*Order Re: Post–Trial Motions* at 3. The crux of the dispute is how much of the image must be "scanned" during the "final scan," *i.e.*, would a prior art device anticipate if it "scanned" more than the selected portion, and would an accused device fail to infringe if it "scans" more than the selected portion.

Hewlett argues that step (d) was not disclosed in Cawkell because step (d) requires that only the selected portion be scanned into the computer on the second pass and that Cawkell discloses doing a second scan of the entire picture. Even if this issue had been properly raised,[5] we do not agree with Hewlett's construction of step (d). The ordinary meaning of step (d) does not require that only the selected portion be scanned. The plain language of the step states that "[the] final scan [is] of a portion of the picture." When an entire picture is scanned, any previously selected portion will also necessarily be scanned. Hewlett's interpretation would require the court to construe the cited passage as requiring that no more than the selected portion is scanned. However, the language is not so limited. We cannot construe the claim to add a limitation not present in the claim itself. *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed.Cir.2003). Thus, element (d) is disclosed by Cawkell.[6] The parties' remaining disputes concerning the meaning of claim terms in element (d), *e.g.*, whether

---

5. In an order denying summary judgment of invalidity of the asserted claims of the '635 patent, the district court construed step (d) as requiring "scanning only the selected portion." *Hewlett–Packard Co. v. Mustek Sys., Inc.*, No. 99–CV–0351, slip op. at 9 (S.D.Cal. Feb. 10, 2000) (*"Order Denying Summary Judgment of Invalidity"*). Both Mustek and Hewlett subsequently filed *Markman* briefs requesting that the court construe step (d). However, Hewlett urged the court to adopt the above quoted instruction, which did not include the "only selected portion" language. On June 28, 2001, the court issued an order construing the claim at issue, adopting the "ordinary meaning" construction for claim 1. *Hewlett–Packard Co. v. Mustek Sys., Inc.*, No. 99–CV–0351 slip op. at 1 (S.D. Cal. June 28, 2001) (*Claim Construction Order*). Hewlett thus appears to have waived a construction that would include the "scanning only the selected portion" limitation.

6. Moreover, even under the appellee's construction, Cawkell anticipates element (d) because it does disclose only scanning the selected portion. Cawkell states "[a] second scan of the image, *during which only the designated area or areas are scanned,* is then initiated under the control of the microprocessor from the data previously received from the electronic window controls." Cawkell at col. 3, ll. 35–38 (emphasis added). The anticipation analysis asks solely whether the prior art reference discloses and enables the claimed invention, and not how the prior art characterizes that disclosure or whether alternatives are also disclosed. *See Celeritas Techs. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed.Cir.1998).

the claim term "scan" requires data to reach memory, are irrelevant. Even if Hewlett were to prevail on these issues, Cawkell would still anticipate. We will not resolve those disputes, as Hewlett requests, "[in order] to guide district courts in any future litigation regarding the '635 patent." (Appellee's Br. at 36.)

As to element (e), Hewlett argues that element (e) is not met based on the same logic upon which it argues that element (d) is not met. Specifically, Hewlett argues that "Cawkell's lack of '635 [claim 1] element (e) flows directly from the absence of element (d). When Cawkell's second scan image is displayed, it depicts the selected portion's true black or white data with the surrounding, unselected regions presented as a black field." (Appellee's Br. at 54.) As with element (d), Hewlett's argument rests upon a construction of element (e) requiring that *no more* than the selected portion is displayed. Because the language of the claim is not limited to the display of only the selected portion, it is irrelevant whether Cawkell discloses displaying more than the selected portion. The jury's finding that Cawkell discloses element (e) of claim 1, therefore, is also supported by substantial evidence.

We have considered Hewlett's other arguments and find them to be without merit. We conclude that there is no basis for setting aside the verdict of anticipation of claim 1 of the '635 patent.

**B. Obviousness of Claims 2–8 of the '635 Patent in View of the Mustek Scanner**

Although the ultimate conclusion of obviousness is a question of law for the

court to decide, *Duro–Last, Inc. v. Custom Seal, Inc.,* 321 F.3d 1098, 1108 (Fed.Cir. 2003), the parties agreed to submit the issue to the jury. In such a situation:

> When an issue of law has been submitted to the jury upon disputed facts—for example, a jury special verdict on patent claim obviousness where the underlying facts have been disputed—the standard of review has two parts. We first presume that the jury resolved the underlying factual disputes in favor of the verdict winner and leave those presumed findings undisturbed if they are supported by substantial evidence. Then we examine the legal conclusion *de novo* to see whether it is correct in light of the presumed jury fact findings.

*Jurgens v. McKasy,* 927 F.2d 1552, 1557 (Fed.Cir.1991) (citations omitted), *cert. denied,* 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991). This court has suggested the use of special interrogatories on the issue of obviousness to aid in appellate review. *See Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1563 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994). However, the jury here was simply asked to reach the ultimate issue of obviousness. For purposes of appellate review, we must assume that the jury resolved factual issues in Mustek's favor. *Jurgens,* 927 F.2d at 1557.

The jury found claims 2–8 to be "obvious in view of the prior art." *Special Verdict* at 7.[7] During trial, the use of the Mustek scanner was demonstrated to the jury. The demonstration included how the prior art scanner could be operated in a manner that fell within the scope of the claims. Three of Mustek's witnesses testified that

---

7. The jury also found claim 1 to be obvious; we need not consider that determination since we have concluded that claim 1 was properly found to be anticipated.

the claimed methods had been publicly performed using the prior art scanner in the manner demonstrated to the jury.

■ Hewlett attacks the evidentiary support for the finding of obviousness as to independent claim 6 by arguing that the testimony regarding the use of the Mustek scanner was uncorroborated. Hewlett's dissatisfaction with the evidence presented by Mustek centers on the testimony of the three Mustek witnesses regarding the operation of Mustek's prior art scanner before the date of Hewlett's invention. As corroboration of the testimony, Mustek cites the operation of an actual prior art device in the presence of the jury. The issue is whether the oral testimony was sufficiently corroborated to permit the jury to pass upon the evidence. *See Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed.Cir.2002) (holding that "the evidence of record [comprised solely of oral testimony] did not provide the clear and convincing evidence necessary to invalidate the patent for prior public knowledge"), *cert. denied*, 537 U.S. 1019, 123 S.Ct. 537, 154 L.Ed.2d 426 (U.S.2002). We conclude that the testimonial evidence here was sufficiently corroborated by the operation of the device itself, which was "made contemporaneously with the alleged prior invention." *Id.*

■ Hewlett also questions whether the operation of the Mustek scanner includes the required step of "perform[ing] a final scan of a portion of the picture which *corresponds* to the portion of the preview scan image to produce a final scan image." '635 patent, claim 6 (emphasis added). Hewlett does not argue that the device cannot be operated so as to produce correspondence, but rather argues that "[b]ecause its second scan image does not always 'correspond' to the selected portion, the Microtek scanner alone cannot anticipate or render the preview scan claims obvious." (Appellee's Br. at 63.) The lack of correspondence occurs because "merely changing one setting on the Microtek device causes it to behave in a [different] manner." (Appellee's Reply Br. at 20.) Hewlett's argument that the image does not *always* correspond, however, is misplaced. Just as "an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes," *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 622–623 (Fed.Cir.1995), a prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention. Substantial evidence, therefore, supports the jury verdict that the prior art product produced correspondence.

As to claims 2–5, 7, and 8, Hewlett additionally argues against invalidity because the Mustek scanner operated using a "ruler display," rather than by "displaying ... dimensions." (Appellee's Br. at 63–64.) Hewlett's position is that the only evidence of obviousness as to this recitation required the combination of the Mustek scanner with U.S. Patent No. 4,332,464 to Bartulis. Hewlett then proceeds to distinguish that combination.

As shown in the image reproduced below, the user interface of the Mustek scanner provides a box representing the selected portion of the image. The box is displayed relative to two rulers.

The basis of Hewlett's argument is that the claim recitation "displaying ... dimensions" requires displaying number values representing the dimensions of the selected portion of the image. By displaying a representation of the selected portion of the image relative to two rulers, however, the Mustek scanner displayed the dimensions of the selected portion of the image. The Mustek interface, therefore, fell within the literal scope of the disputed claim recitations. We therefore need not reach Hewlett's arguments that the Mustek scanner and the Bartulis patent should not have been combined.

Thus, we find that the jury verdicts regarding the factual predicates of obviousness are supported by substantial evidence. We also find no error in the legal conclusion of obviousness based on those factual findings, and, accordingly, affirm the verdict of obviousness as to claims 2–8 of the '635 patent.

In view of our disposition of the case we need not reach the issues of willfulness or damages.

## CONCLUSION

Thus, the verdict of infringement of claims 1, 4, 7–9 of the '878 patent; the grant of JMOL of infringement under the doctrine of equivalents; and the denial of JMOL of noninfringement as to those claims are reversed. The verdicts of invalidity of claim 1 of the '635 patent under 35 U.S.C. § 102 and claims 2–8 of the '635 patent under 35 U.S.C. § 103 and the denial of JMOL of validity as to those claims are affirmed.

*REVERSED–IN–PART AND AF-FIRMED–IN–PART.*

## COSTS

No costs.

MAYER, Chief Judge, dissenting.

Because substantial evidence supports the jury's finding of infringement and the district court incorrectly granted judgment as a matter of law on the award of lost profits, I dissent.

The construction of claim 1, element f, of the 5,336,878 patent that was read to the jury simply required it to determine whether the accused device has a scan speed selector or its equivalent which,

based on the user's selection, generates a scan speed signal to indicate that one of the different scan speeds is selected. As the court observes, neither party objected to this instruction, so it is not at issue. Hewlett Packard presented evidence that Mustek's scanner allowed a user to select a scan speed through the selection of a resolution. And while the user may not know that he is selecting a scan speed, that is irrelevant. The unchallenged claim construction does not require that a user know what he is selecting, only that a selection has been made. By choosing a resolution, a scan speed has been selected. It also is of no moment that there is not a one to one correspondence or that some resolutions share the same scan speed, a speed has been selected nevertheless. Whether selecting a resolution was the same as selecting a scan speed, was a factual determination for the jury. Evidence presented clearly supports the proposition that selecting a resolution results in the selection of a speed. Therefore, the jury's finding of infringement should be affirmed.

Confirming infringement requires review of the trial court's treatment of the jury's damages verdict. The district court determined that substantial evidence did not support the lost profits award because it had excluded any testimony from Hewlett–Packard's damages expert regarding the quantum of an award if only one patent were found to infringe. This might have been the correct result if the expert's testimony had been the only evidence on point, but that is not the case. First, the jury was instructed how to calculate damages if both U.S. Patent Nos. 5,336,878 and 4,837,635 were infringed. The methodology was simple: multiply the number of infringing units Mustek sold by Hewlett–Packard's market share to find the number of units eligible for lost profits; then multiply the number of eligible units by Hewlett–Packard's profit margin per unit to yield lost profits. Exhibits 407 and 408 detail which scanner models infringe which patents, and exhibit 480 shows Mustek's unit sales by model. Exhibit 477 summarizes Hewlett–Packard's market share by scanner model. Lastly, exhibit 485 reflects Hewlett–Packard's actual sales and profitability. The district court concluded that expert testimony was required to explain to the jury how to piece the evidence together, even as the court acknowledged that the jury could follow the exhibits to reach a rational award. The jury merely needed simple math skills and the exhibits to figure the lost profits. That is what it quite capably did and its verdict should be reinstated.