NESTIER CORPORATION, Appellant,

v.

MENASHA
CORPORATION–LEWISYSTEMS
DIVISION, Appellee.

Appeal No. 83–1313.

United States Court of Appeals,
Federal Circuit.

Aug. 1, 1984.

Christopher B. Fagan, Cleveland, Ohio, argued for appellant. With him on the brief was Patrick R. Roche, Cleveland, Ohio.

Waỹne E. Babler, Jr., Milwaukee, Wis., argued for appellee. With him on the brief were Allan W. Leiser and Robert B. Lewy, Milwaukee, Wis.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, DAVIS and BALDWIN, Circuit Judges.

DAVIS, Circuit Judge.

Nestier Corporation (Nestier or appellant) appeals the judgment of the United States District Court for the Southern District of Ohio, entered April 2, 1983, finding non-infringement of U.S. Patent No. 3,463,-345 (the '345 patent)[1] by the Menasha Corporation, LEWISystems Division (Menasha or appellee). We affirm.

I

The '345 patent is directed to a reusable tote box, with an attached lid, molded from plastic, for storing and transporting merchandise and various articles. The tote boxes are capable of nesting, *i.e.*, with lids open one box may be placed inside another. With lids or covers closed, the boxes may

---

1. The '345 patent was issued August 26, 1969 on an application filed August 28, 1968. The inventor was Kenneth R. Bockenstette.

also be stacked, one on top of another. The lids of Nestier's boxes have a flat surface and an inset feature which prevents one box from sliding off of the other when stacked together. The boxes furthermore have complementary interfitting raised and depressed areas in the free edges of the covers to enhance security as well as to provide cover strength for stacking.

Appellee Menasha produces attached lid tote boxes which are dimensionally compatible with Nestier's boxes, *i.e.*, they can be nested in or stacked upon Nestier's boxes. The designs of Nestier's and Menasha's respective tote box covers are different. Menasha's boxes have neither inset covers nor a plurality of interdigitating teeth on each cover.

On July 2, 1981, Nestier sued Menasha, charging that various tote boxes manufactured, distributed, and sold by Menasha willfully infringed the '345 patent. In defense, Menasha denied infringement, claimed that the '345 patent was invalid on several grounds, and later added the claim that Nestier lacked title to the patent. A thirteen day jury trial was conducted in late July and early August, 1983. As ordered by the District Court, counsel for both parties filed requested jury instructions on the opening day of the trial. Judge Rice finalized the jury instructions near the trial's conclusion by adopting, modifying, or rejecting various portions of the proposed instructions. Not included were jury instructions (requested by appel-

lant) concerning evaluation of infringement under the doctrine of equivalents.

The jury was instructed and given six special interrogatories related to issues of (1) infringement, (2) willful infringement, (3) invalidity based on (a) obviousness, (b) vagueness and indefiniteness, and/or (c) failure to disclose best mode, and (4) damages. The jury found that there had been no infringement of the patent by Menasha, and that the patent was not invalid for obviousness of the invention claimed nor was the patent invalid for vagueness or failure to disclose best mode. The jury did not answer the damages interrogatory because it found no infringement. Nestier made no motion for a judgment notwithstanding the verdict, nor did it request a new trial.

The District Court then entered judgment in favor of Menasha holding the '345 patent not infringed. No judgment was entered on the issue of validity/non-validity [2] or on other issues raised by the parties that had not been previously disposed of by motion.[3] On appeal, Nestier asserts that the District Court erred in (1) not instructing the jury on the doctrine of equivalents in its charges relating to infringement and willful infringement, (2) not directing a verdict in Nestier's favor determining willful infringement and that Menasha did not meet its burden of proof as to patent invalidity, and (3) not making a holding in its entry of judgment that Menasha did not meet its burden of proof relative to its defense of patent invalidity.

---

**2.** The District Court stated in the entry regarding judgment that:

> [O]nce non-infringement is found, it would be improper to enter judgment on validity. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 334–35 at n. 7, 100 S.Ct. 1166, 1171–1172 at n. 7, 63 L.Ed.2d 427 (1980). Accordingly, this court will only enter judgment on the issue of validity/non-validity (and on other issues requested by the parties) when and if this court, or an appellate court, determines that the judgment regarding non-infringement must be overturned . . . .

**3.** Nestier moved for a directed verdict at the close of Menasha's case on the issues of title, infringement, willful infringement, validity, no-

tice of infringement (for purposes of pre-suit damages), and Nestier's status as sole party in interest. *The court took under advisement the* motions based on title and on party in interest, and subsequently ruled in Nestier's favor on those issues at the close of the evidence; all other motions were denied. At the close of all the evidence, Nestier did not move for a directed verdict. Menasha's motions at that time were all denied, including motions for directed verdict for failure to prove title, failure to join an indispensible party, patent invalidity for obviousness, non-infringement and non-willfulness, failure to prove patent marking or notice of infringement for pre-suit damages, and failure to prove by competent evidence an amount of damages post-suit.

## II

■ The doctrine of equivalence permits a finding of infringement, despite the absence of a literal identity between a claimed device and the elements of an alleged infringing device, where the "two devices do the same work in substantially the same way, and accomplish substantially the same result." *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950), *quoting Machine Co. v. Murphy,* 97 U.S. 120, 125, 24 L.Ed. 935 (1877). Equivalence in this regard "does not require complete identity for every purpose and in every respect." *Graver Tank,* 339 U.S. at 609, 70 S.Ct. at 857. Our review of the record and arguments on appeal reveals no error or abuse of discretion by the District Court in failing to include an instruction to the jury concerning infringement under the doctrine of equivalence. Simply stated, there was no basis in the evidence such that the court was required to give the jury any such instruction, and appellant did not urge (at the trial) infringement on the basis of equivalents.

Appellant maintains nevertheless that (1) there was sufficient evidence to require an instruction on equivalence, and that (2) in any event, analysis of infringement under the doctrine of equivalence necessarily follows any analysis of literal infringement in which no literal infringement is found. As we have noted, we disagree on both points.

■ At trial, appellant presented the position, through testimony and demonstration, that the Menasha tote boxes were compatible with Nestier's boxes in both their nesting and stacking functions. Appellant also introduced documentary evidence to indicate that Menasha intended to produce boxes which were compatible with Nestier's boxes. However, this evidence was presented as part of appellant's claims of literal, willful infringement. At no time did Nestier's attorneys or witnesses present evidence which was explicitly related to the jury in the *Graver Tank* terms of equivalence of functions, means, and result. Analysis of equivalence involves those three factors, and a jury cannot be expected to be able to make any such determination absent evidence and argument concerning the doctrine and each of its elements. Furthermore, equivalence must be established with respect to the claims of the patent, not (as was perhaps attempted here) for the commercial structures involved. "[I]t is not enough merely to demonstrate the equivalency of two commercial devices." *Tektronix, Inc. v. United States,* 179 USPQ 703, 704 (Ct.Cl.1973).[4] This is not to say that the exact *Graver Tank* language must be used by attorneys and witnesses. However, appellant, which bore the burden of proving infringement, had the responsibility of establishing that context at trial and of stating its case within that context—but it failed to do so.

■ Moreover, the theory of infringement through equivalence is not inherent, or necessarily included, in literal infringement theory when that alone is presented to a jury, although the circumstances and requirements might possibly differ in a non-jury trial. For a bench trial, *see, e.g., Decca Limited v. United States,* 420 F.2d 1010, 1014, 190 Ct.Cl. 454, 164 USPQ 348, 351 (1970). In a jury trial, a court should not instruct on a proposition of law about which there is no competent evidence. *Jackson v. Southern Railway Co.,* 317 F.2d 532, 537 (5th Cir.), *cert. denied,* 375 U.S. 837, 84 S.Ct. 77, 11 L.Ed.2d 65 (1963). Competent proof is needed, not mere "conjecture and speculation." *General Motors Corp. v. Walden,* 406 F.2d 606, 609 (10th Cir.1969). The fact that some of Nestier's arguments concerning literal infringement might also have been relevant to an equivalency analysis is not sufficient, in itself, to establish that evidence and context for a jury. Although evidence was presented here which—had the context been established—might have been related to equiva-

4. The evidence cited by appellant at the oral argument as specifically bearing on the doctrine of equivalents all relates to the commercial structures of both parties, not to the claims of the '345 patent.

lence of functions and results, there was an absence of any such evidence concerning equivalence of means.

Indeed, two trial events lend especially telling support for the district judge's decision not to include any equivalence instruction. At trial, Nestier's own expert witness Mr. Beall refused to give an opinion on equivalence when questioned by Nestier's counsel:

Q. With respect to the matter of equivalence, do you have an opinion as to whether there is equivalence between the Menasha box and the structure claimed in the Bockenstette claims?

[Objection asserted and denied.]

MR. BEALL: I would never get to the Doctrine of Equivalence because I—I think the claim describes the Menasha box so I would never consider equivalence but I—I don't think that was your—I would not then have an opinion because I don't think the Doctrine of Equivalence comes into play.

MR. FAGAN (Nestier's attorney): All right. Thank you, Mr. Beall.

BY MR. FAGAN:

Q. Mr. Beall, were you—

A. I have an example of the Doctrine of Equivalence that I just thought of sitting here if that would help any.

Q. I think that might be just past the subject of the question.

In addition, Nestier's counsel stated, during the conference (after the evidence) on the form of jury instructions, that the doctrine of equivalents was not Nestier's theory:

MR. FAGAN: I can't dispute that. It is not our theory. We have from the very beginning advocated direct literal infringement.

■ That Mr. Beall had no opinion on equivalence, and, that Nestier's counsel

stated that equivalence was not Nestier's theory, do not *per se* mean that the question of equivalence could have played no role in this case. However, those statements, taken in conjunction with the lack of evidence in the rest of the record to form a basis for analysis of equivalence by the jury, provide ample support for Judge Rice's decision not to include any instruction to the jury which would have required analysis of that kind of infringement.[5]

### III

■ Likewise without merit are Nestier's other arguments claiming error by the district judge concerning patent invalidity and willful infringement. First, Nestier failed to move for directed verdict on patent validity and willful infringement at the close of all the evidence, and cannot now claim error for the court's failure to direct a verdict on those issues. Nestier had moved for a directed verdict at the end of appellee's case, but introduction of new evidence on rebuttal, after the motion was denied, waived any possible error in the denial, absent renewal of the motion at the close of the evidence. *See* 5A Moore, Federal Practice ¶ 50.05[1]; *see also Gebhardt v. Wilson Freight Forwarding Co.*, 348 F.2d 129, 132 (3d Cir.1965).[6] In addition, appellant made no motion, after the verdict, for judgment notwithstanding the verdict or for new trial. Appellant seems to maintain that such motions were not necessary in order to preserve the rights we discuss in this Part III. It is settled that this position is incorrect. *See, e.g., Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1510–12 (Fed.Cir.1984).

### IV

■ Finally, there was no reversible error or abuse of discretion, in the circumstances here, in the District Court's withholding of judgment on the issues related

---

**5.** Nestier also claims error by the District Court in not instructing the jury on equivalence with regard to willful infringement. Because, and we hold, there was no occasion to give an instruction on equivalence with respect to literal infringement, there was equally no need to give one with respect to willful infringement. In any event, Nestier apparently requested no such

instruction with respect to willfulness, nor is there any evidentiary basis in the record for one.

**6.** A motion for directed verdict at that time would have been required in order to have moved for judgment notwithstanding the verdict, under Fed.R.Civ.P. 50(b).

to the '345 patent's validity—despite the jury's having found the patent not invalid—in light of the jury's finding of non-infringement. As stated by one of our predecessor courts,

> While the better practice is to treat both the validity and infringement issues, *Sinclair Co. v. Interchemical Corp.*, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945) particularly in view of the public interest in the validity issue, *Ditto, Inc. v. Minnesota Mining and Manufacturing*, 336 F.2d 67 (8th Cir.1964), it is not always necessary to do so. *Dresser Industries, Inc. v. United States*, 432 F.2d 787, 193 Ct.Cl. 140 (1070). Where, as here, non-infringement is clear and invalidity is not plainly evident, it is appropriate to treat only the infringement issue. *Lockwood v. Langendorf United Bakeries*, 324 F.2d 82 (9th Cir.1963).

*Leesona Corp. v. United States*, 530 F.2d 896, 906, n. 9, 208 Ct.Cl. 871, 192 USPQ 672 (1976), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

There is a stronger public interest in the elimination of invalid patents than in the affirmation of a patent as valid, at least in part because patents maintain a presumption of validity. *See Hieger v. Ford Motor Co.*, 516 F.2d 1324, 1327, 186 USPQ 374, 375 (6th Cir.1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976). Here, the '345 patent was judged to have been not infringed by Menasha; to then adjudge the patent valid would be to decide an unnecessary question as between these parties. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 333–34, 100 S.Ct. 1166, 1171–1172, 63 L.Ed.2d 427 *reh. denied*, 446 U.S. 947, 100 S.Ct. 2177, 64 L.Ed.2d 804 (1980). Menasha does not ask us to pass on validity.

### Conclusion

For these reasons, the judgment of the District Court is affirmed.

AFFIRMED.