**LEAR SIEGLER, INC.,**
Plaintiff/Cross–Appellant,

v.

**SEALY MATTRESS COMPANY OF MICHIGAN, INC., Hoover Universal, Inc. and Hoover Group, Inc., Defendants–Appellants.**

Nos. 88–1540, 88–1562.

United States Court of Appeals,
Federal Circuit.

May 8, 1989.

Rehearing Denied June 5, 1989.

Suggestion for Rehearing In Banc Declined June 30, 1989.

Ernie L. Brooks, Brooks and Kushman, Southfield, Mich., for plaintiff/cross-appellant. With him on the brief was Mark A. Cantor, Southfield, Mich.

Roy E. Hofer, Willian Brinks Olds Hofer Gilson and Lione, Ltd., Chicago, Ill., for

defendants-appellants. With him on the brief were David A. Anderson and Michael H. Baniak, Chicago, Ill.

Before FRIEDMAN and MICHEL, Circuit Judges, and SKELTON, Senior Circuit Judge.

MICHEL, Circuit Judge.

Sealy Mattress Company of Michigan, Inc., Hoover Universal, Inc., and Hoover Group, Inc. (Sealy) appeal the judgment of the United States District Court for the Eastern District of Michigan, Civil Action No. 84–CV–75319–DT (August 21, 1987), entered in response to a jury verdict that the claims of the patents in suit are infringed under the doctrine of equivalents by Sealy. The jury awarded the patent assignee, Lear Siegler, Inc. (LSI), $2.8 million in damages. We reverse.

*Background*

On November 20, 1984, LSI sued Sealy for infringement of LSI's U.S. Patent No. 3,825,960, entitled "New Box Spring" and issued to Harold W. Inman et al. (the Inman patent), and LSI's U.S. Patent No. 3,833,948, entitled "Box Spring Assembly" and issued to Zygmunt M. Surletta et al. (the Surletta patent). The Inman and Surletta patents relate to isolated, non-contacting, modular torsion bar springs used in box spring assemblies, upon which mattresses rest in conventional beds. LSI's patents claim box spring assemblies incorporating such modular torsion bar springs.

As recited in the only independent claim of the Inman patent, claim 1, LSI's spring assembly includes:

[A] plurality of spring members arranged to define a load-supporting area having first and second side and first and second end marginal edges, each of said spring members being defined by an integral wire having a straight section and a fishmouth section at least at one end thereof, each spring member being disposed in isolated non-contacting relationship with all of the remaining spring members.

Illustrative of the claimed invention is Fig. 4 of the Inman patent below, showing an integral wire having three torsion bar spring members 26, 28, and 32 disposed transversely of straight section 22. The fishmouth section, section 24, includes torsion bars 26 and 28, interconnected by base 30 and upper and lower spacer bars 34 and 36, respectively, with torsion bar 32 therebetween. Torsion bar 38, connecting length 40, and terminal portion 42 constitute the fishmouth support section. *See* Inman patent, col. 1, lines 60–67, col. 2, lines 1–7.

*Fig. 4* --Inman Patent

Following the patenting of LSI's modular torsion bar box spring assemblies, Sealy developed, manufactured, and sold its own box spring assemblies, including individual, non-contacting, torsional springs. As shown below in Fig. 4 (which shows a facing pair of the Sealy springs) from U.S. Patent No. 4,470,584 assigned to Sealy (Mi-

zelle patent), Sealy's spring includes two torsion bars, 58 and 64, connected by section 62, and straight section 60. Section 67 connects the spring to a support section 66.

— FIG. 4--Mizelle Patent

LSI alleged that Sealy's springs infringed certain dependent claims of LSI's patents.

The case between LSI and Sealy was heard by a jury. At trial, LSI contended that, properly interpreted, its claims read on Sealy's spring. Sealy contended that its spring was not covered by LSI's claims.

Particularly through the cross-examination testimony of a Mr. Mizelle, designer of the accused spring, LSI sought to establish that the Sealy spring (Plaintiff's Exhibit No. 1) was "the same design" and functioned the same as LSI's spring (Plaintiff's Exhibit No. 2), which allegedly incorporated all the features recited in the claims.

At the close of LSI's case-in-chief, and again at the close of the evidence, Sealy moved for a directed verdict of non-infringement, arguing that plainly "there are elements [e.g., torsion bars] missing from the defined fishmouth section [as recited in the dependent claims of each of the patents]. And, therefore, there cannot be literal infringement, to put it in a nutshell." Further, Sealy pointed out that LSI's counsel had neither explicitly relied on the doctrine of equivalents nor specifically proved its elements. Thus, Sealy argued, LSI did not delineate the elements of infringement under the doctrine of equivalents sufficiently for the issue to reach the jury.

The court denied the motions. As to Sealy's argument of no literal infringement, the court stated that the testimony, "if believed by the Jury, would be sufficient for the Jury to make a finding of infringement...." The court also stated that considering the evidence in a light most favorable to plaintiff, a reasonable inference of infringement under the doctrine of equivalents could be made by the jury.

In closing arguments, LSI reminded the jurors of the testimony of Mr. Mizelle. According to LSI's counsel, at least a portion of Mr. Mizelle's cross-examination testimony "has to do with the equivalents" and shows that if one takes Sealy's spring and just turned portions around, and "if you eliminate one of the torsion bars, ... just—snip, snip— ...," one ends up with LSI's claimed spring as embodied in Plaintiff's Exhibit No. 2.

Responding to a special verdict form, the jury determined that the patents were infringed, not literally but under the doctrine of equivalents, and awarded $2,806,571 as the "total compensation to be received by plaintiff for defendants' use of the patented product."

Sealy then moved for judgment notwithstanding the verdict (JNOV) of infringement or, in the alternative, for a new trial. In part, Sealy argued that LSI's showing of

equivalence was legally inadequate. According to Sealy, this court's decision in *Nestier Corp. v. Menasha Corp.—Lewisystems Division*, 739 F.2d 1576, 222 USPQ 747 (Fed.Cir.1984), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985), required that LSI explicitly delineate to the jury, through testimony and argument, equivalence of function, means, and result between the claimed and accused springs, and that failing such delineation in testimony and argument, the jury's verdict cannot stand.

The court denied the motions for JNOV and for a new trial. Although acknowledging *Nestier's* requirement that equivalence of function, means, and result must be specified to the jury, the court said the requirement had been met. In the court's view, on the basis of the testimony, arguments, and exhibits as presented, the jury was perfectly capable of reaching a reasonable conclusion with regard to equivalence. Furthermore, the court distinguished *Nestier*, pointing out that in *Nestier* the plaintiff never expressly relied on the doctrine of equivalents, while in this case the doctrine was in issue "[f]rom the beginning of the trial to the end."

Sealy appeals from the district court's judgment because of the court's denial of Sealy's alternative JNOV and new trial motions. LSI cross appeals on damages, claiming that the judgment improperly omitted an award of damages for 1987.

## OPINION

█ Infringement under the doctrine of equivalents "does not require complete identity for every purpose and in every respect," *Graver Tank and Mfg. Co., Inc. v. Linde Air Products Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950), but does require substantial identity of function, means, and result. *Graver Tank*, 339 U.S. at 608, 70 S.Ct. at 856. The less demanding standard under the doctrine exists in order to hinder the "unscrupulous copyist" who could otherwise imitate a patented invention as long as he was careful not to copy every inconsequential detail of the claimed invention, or to make some

"unimportant and insubstantial" change to the claimed invention. *Id.* at 607, 70 S.Ct. at 855. To allow such free use of a patented invention would be, the Court said, "to convert the protection of the patent grant into a hollow and useless thing." *Id.*

While the doctrine of equivalents extends the claims beyond their literal words, it does not prevent the manufacture, use, or sale by others of every device generally similar to the patented invention. As we have said, although an "invention may be entitled to some range of equivalents, a court may not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim[s] on which the public is entitled to rely in avoiding infringement." *Perkin–Elmer Corp. v. Westinghouse Electric Corp.*, 822 F.2d 1528, 1532, 3 USPQ2d 1321, 1324 (Fed.Cir. 1987). Thus, while infringement under the doctrine requires "only" substantial identity, substantial identity must be proven with regard to all three elements of the doctrine specified in *Graver Tank: function* performed, *means* by which function is performed, and *result* achieved. *Universal Gym Equipment, Inc. v. ERWA Exercise Equipment Ltd.*, 827 F.2d 1542, 1548, 4 USPQ2d 1035, 1039 (Fed.Cir.1987).

█ In order to assure such separate analysis, we said in *Nestier*, as Sealy's counsel argued before the trial court, a jury must be separately directed to the proof of each *Graver Tank* element. *Nestier*, 739 F.2d at 1579, 222 USPQ at 749. The party asserting infringement must present *"evidence* and *argument* concerning the doctrine and *each* of its *elements."* *Id.* (emphasis added). The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement. *Id.* Accordingly, the fact there was evidence and argument on literal infringement, that may also bear on equivalence, does not satisfy *Nestier. Id.*

Absent the proper *Graver Tank* context, i.e., a showing of how plaintiff compares the function, means, and result of its claimed invention with those of the accused

device, a jury is more or less put to sea without guiding charts when called upon to determine infringement under the doctrine. While we do not doubt the ability of a jury to decide the factual issue of equivalence, to enable the jury to use its ability, *Nestier* requires that the three *Graver Tank* elements must be presented in the form of particularized testimony and linking argument.

In our view, the jury in this case was not so guided. It is clear that LSI did not elicit testimony explicitly comparing the claimed and accused devices as to all three elements of equivalence. Even granting that there *was* adequate testimony on substantial identity of function, means, and result, no testimony reasonably served to articulate the comparison.

Cross-examination testimony of Mr. Mizelle on the structural *differences* between the claimed invention and the accused device included the following:

Q: Now, if you took Plaintiff's Exhibit #2—I have got two left over—if you took those [torsion bar spring members] out and threw them away and you swung this around, that would be the same design, wouldn't it?

A: I don't know.

Q: Well, take a look at it. You have been designing these a lot longer than me and I didn't have any trouble figuring it out. If I am wrong, you straighten me out.

It would be the same as Plaintiff's Exhibit #1, wouldn't it, Mr. Mizelle?

A: If wishes were horses, beggers [sic] would ride.

\*   \*   \*   \*   \*   \*

Q: Well, just by looking at it, would you agree it is the same configuration.

A: *What you have done is you have taken and made a whole different spring out of what you had.*

Q: Perhaps. I am not arguing with you. I just want to know whether you agree.

A: You can do anything you want to.

Q: If you took these two, cut this right here and cut it right here and put that up there—

A: Okay, if we did—

Q: Yes.

A: —and if your patent describes it that way, I would say you'd have the same spring.

(Emphasis added).

Yet Mizelle's testimony is all that LSI points to as compliance with *Nestier's* requirement for evidence. Whether or not it contains sufficient probative force, clearly it was not broken down into the three *Graver Tank* elements as required by *Nestier*.

As for argument linking such evidence as was elicited to the three elements for equivalence under the doctrine, all that exists is the summary assertion of LSI's counsel during closing argument that Mr. Mizelle's testimony "has to do with equivalents."

Moreover, since there was neither argument nor evidence explicitly setting forth equivalence of result, function, and means, the trial court should not have instructed the jury on the doctrine.\* *Nestier*, 739 F.2d at 1579, 222 USPQ at 750. Having improvidently submitted the case to the jury on the doctrine of equivalents, the court was obliged to grant judgment notwithstanding the verdict.

The *Nestier* case does present several facts different from the case at hand. In *Nestier*, the plaintiffs explicitly disavowed reliance on the doctrine of equivalents, then sought to attack the trial court because it did not instruct the jury on the doctrine. *Nestier*, 739 F.2d at 1578, 1580, 222 USPQ at 749, 750. Here, LSI never explicitly disavowed the doctrine, but referred to it in closing. Furthermore, the jury was instructed on the doctrine. None of these distinctions are critical, however. *Nestier* requires explicit exposition of all three *Graver Tank* elements. General references to the doctrine do not comport with this requirement. Interpreting the import of *Graver Tank*, the *Nestier* court said "a

---

\* Accordingly, we need not and do not offer any view as to the correctness of the instruction.

jury cannot be expected to be able to make any such determination absent evidence and argument concerning the doctrine and *each of its elements." Nestier,* 739 F.2d at 1579, 222 USPQ at 749 (emphasis added).

It can be argued that the holding in *Nestier* is limited to where the doctrine of equivalents was disavowed and that the alternative ground of absence of explication as to each *Graver Tank* element is not truly an alternative ground of decision but merely dicta. Strictly speaking, it can be considered dicta because the result would have been the same without it. Nevertheless, *Nestier* is binding precedent as to what *Graver Tank* implicitly requires. *Nestier* also was a well reasoned decision of a five-judge panel of this court. Writing for the court, Judge Davis persuasively noted that if a jury is to rationally find all three elements of equivalence, it must be told what evidence establishes the equivalence of the claimed and accused devices as to each element. Otherwise, there is too much risk the jury will simply compare the two inventions as to overall similarity, in violation of *Graver Tank.*

The principle of *Nestier* finds application to the facts here. And in this case, unlike *Nestier,* the failure of explication of *Graver Tank* elements is essential to our disposition of this appeal.

The evidence was fatally deficient for failure of explication as required by *Nestier.* In reaching our decision, we have not relied upon the alleged improper reference to LSI's commercial product rather than the claimed invention. For purposes of our review, we need not decide the correctness of the court's statement that it was "appropriate for the jury to consider an example of the claimed invention." In view of our decision, the cross-appealed damages issue is moot, and LSI's call for sanctions under Rule 38 of the Federal Rules of Appellate Procedure is clearly without basis.

### CONCLUSION

For the reasons stated, the judgment of the district court is REVERSED.